DREW J.
liOn November 19, 2015, Bobby Clay was backing her Jeep Liberty from her driveway, when she collided with a 2003 Mercury Grand Marquis which was owned by Jefferia Washington, but was being driven on the roadway by her goddaughter, “Shay” Scott.
Clay took responsibility for the wreck, wanting to avoid making a claim against her insurance company. She told Scott that she would pay the damages she caused to the Mercury, which were confined to an area around the rear passenger-side door. Scott agreed and Clay proceeded to church. The three ladies gathered together that evening and reconfirmed the deal.
The next day, a repair estimate was rendered in the amount of $2,061.32, which seemed extremely high to Clay. Nonetheless, within three days of the accident, Clay had paid the repair estimate in full, to end the controversy.
Clay later filed a lawsuit against Washington and Scott, alleging “false estimate charges and fraud.” In turn, Washington filed a counterclaim, alleging that Clay had defamed, harassed and stalked her. A trial *1268 was held in Monroe City Court, with all three parties appearing without counsel.[1] The trial court dismissed all claims, expressing credibility problem with Clay. Only Clay appeals. We affirm.
Clay testified that when she went to the repair shop to pay for the damage to Washington’s vehicle, she had misgivings that she was being |2charged for preexisting damages. Nonetheless, she paid the entire amount, because she was frustrated and “wanted to get it over with.”
The repair estimate was made by Joseph Sanchez, a certified insurance appraiser. The estimate appears to include some preexisting damage.
At this point, the inquiry becomes confusing, because Jack Whit, the actual repairman, testified that he did not charge any fee for those older damages.
There is nothing in the record to indicate that Washington or Scott misrepresented or suppressed the truth with the intention either to obtain an unjust advantage or to cause a loss or inconvenience to Clay. Nor does this record support a finding that Washington and/or Scott obtained a fraudulent estimate. This record supports a clear finding:
(1) Clay failed to establish fraud;
(2) no false estimate was secured; and
(3) no one was defamed.
When Clay began questioning the amount of damages on the estimate, Scott called Washington and suggested that they deal with Clay’s insurer instead. At this point, Clay became frustrated and paid the bill in full.
Clay later brought a photo of Washington’s car to Sanchez so he could offer an estimate to repair what Clay contended were the only damages actually caused by her. He estimated that it would cost $120.45 to clean black marks on the Grand Marquis.
Scott admitted that the Mercury had some preexisting damage at the bottom of the rear passenger door, but maintained that all other damage was caused by Clay.
IsSanchez explained that he included repairs to the door when he gave the first estimate. The entire door was repaired by Whit, who testified that he told Scott’s boyfriend that he repaired the non-wreck-related bottom portion of the door for free, allegedly a savings of $375.
It is possible that Clay may have overpaid, but she did so voluntarily, in an effort to keep the police and her insurance company out of the case. Clay acquiesced in the payment, and there was no fraud.[2] We find no manifest error in the trial court’s dismissal of all claims.[3]
Only Clay appealed, now represented by counsel, arguing:
• fraud was committed when the first estimate was obtained without informing Sanchez that Clay was only going to pay for the damages caused in the accident;
• alternatively, Clay’s consent to pay $2,061.32 was vitiated by error in the *1269 calculation of the repair expense because none of the parties adequately communicated to Sanchez or Whit about what portion of the Mercury was to be repaired;
• the parties were under the false belief that Sanchez’s first estimate included only the damages caused by Clay, meaning there was no meeting of the minds;
• the doctrine of unjust enrichment should have provided Clay some relief from the trial court;[4]
• no compromise was ever reached between the parties; and
It* neither defendant asserted the affirmative defense that the obligation has been extinguished.
This trial record does not support these arguments.
ANALYSIS
Fraud is defined as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953; Benton v. Clay, 48,245 (La.App. 2nd Cir. 8/7/13), 123 So.3d 212; Hibernia Nat’l Bank v. Antonini, 37,836 (La.App. 2nd Cir. 12/10/03), 862 So.2d 331. Fraud must be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957; Benton, supra. Intent to defraud and loss or damage are two essential elements to constitute legal fraud. Benton, supra. The trial court’s findings with respect to a claim of fraud are subject to the manifest error standard of review. Benton, supra. We find that there is no manifest error here. The accident should have been reported to the police and to the insurance companies. If Clay overpaid, she did it voluntarily to avoid police and insurance involvement. She paid, even after learning of the possibility of extraneous repairs being assessed against her, thus adverting to the consequences for which she bargained in such a heated rush. The excellent points of law argued by Clay’s appellate counsel are not supported by the facts in this trial record. On this record, the trial court was not clearly wrong. We affirm.
DECREE
At the cost of plaintiff, the ruling of the trial court is AFFIRMED.

. We note the difficulty of a trial court competently handling litigation among several unrepresented parties, particularly when there are hard feelings between the litigants. We appreciate tire fairness and patience of the trial court in this lawsuit.

. The trial court initially noted that defendants would have to repay $375 for the lower door repairs to Clay. Because Whit said he did not charge to repair the lower dents, however, the trial court felt it could not order the repayment.

. This record is hard to review. It contains not one photo of the two vehicles in question. There are paragraphs of witnesses testifying about damages "from here to here” without the reader knowing to what the witnesses are pointing.

. Required to prove unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for both; and (5) no other remedy at law is available to the one who is impoverished. See La. C. C, art. 2298, et. seq. While Clay argues that these facts meet all requirements, the trial record does not clearly reflect any unjust enrichment, so no further analysis is needed.